UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ELLEN KANITZ,

        Plaintiff,

                                        Case Number 03-10180-BC
v.                                     Honorable David M. Lawson

HAROLD WHITE, M. COOKE,
OSBORNE, M. FREY, and
T. CRAIG,

        Defendants.                        CONSOLIDATED CASES

-and-

GORDON M. BUTLER,

        Plaintiff,

                                          Case Number 03-10322-BC
v.

HAROLD WHITE, M. COOKE,
OSBORNE, M. FREY, and
T. CRAIG,

        Defendants.
_____/

**OPINION AND ORDER ADOPTING IN PART MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION, DENYING
DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY
JUDGMENT WITH RESPECT TO PLAINTIFF KANITZ,
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT WITH RESPECT TO PLAINTIFF BUTLER,
AND DISMISSING DEFENDANTS WHITE AND CRAIG**

This matter is before the Court on objections to a report filed by Magistrate Judge Charles

E. Binder, acting under a general order of reference to conduct all pretrial matters, recommending

that the Court deny the defendants' motion to dismiss and for summary judgment with respect to

plaintiff Ellen Kanitz and deny in part the defendants' motion for summary judgement with respect

to plaintiff Gordon Butler.  The magistrate judge recommended that only defendant Craig be dismissed.  The defendants filed timely objections, to which the plaintiffs responded, and the matter is before the Court for a *de novo* review.

The Court now finds that the defendants' objections lack merit, the defendants misstated material facts in its motion to dismiss and for summary judgment against plaintiff Kanitz, and plaintiff Butler has presented evidence sufficient to raise a triable issue of fact with respect to his equal protection, due process, and civil conspiracy claims.  However, there is insufficient evidence of warden Harold White's participation in the alleged conspiracy.  The Court, therefore, will overrule the defendants' objections save for the one challenging the warden's participation in the conspiracy, adopt in part the report and recommendation, deny without prejudice the defendants' motion against plaintiff Kanitz, deny in part the defendants' motion against plaintiff Butler, and dismiss defendants Craig and White as parties to this action.

## I.

The magistrate judge has provided a detailed statement of facts to which the parties do not object.  A summary follows.

The plaintiff, Gordon Butler, is presently incarcerated at the Parnall Correctional Facility in Jackson, Michigan.  His fiancé, plaintiff Ellen Kanitz, visited him at the prison on October 5, 2002.  During the visit, the plaintiffs claim, corrections officer Mary Cooke entered the visiting room and exclaimed loudly enough for everyone to hear, "That's it, your visitation is terminated, you are on tape rubbing the prisoner's crotch with your hand, your visitation is terminated immediately[.]"  Kanitz Am. Compl. at 4.  The plaintiffs protested, but Kanitz's visit ended when Sergeant Reed Osborne, another corrections officer, supported Cooke's version of events.

As a result of Cooke's allegations, Butler was charged with sexual misconduct through the prison's system of discipline. Investigator Martin Frey sent Kanitz a "Notice of Proposed Visitor Restriction," which included information on a hearing to be held on the proposed restriction. In advance of the hearing, Kanitz submitted letters on her behalf in which she sought production of the video tape documenting her visit with Butler and requested that the visiting room officer be called as a witness at the hearing.

In the letters, Kanitz also recounted her version of events and belief that she and Butler had been "set up." She stated that when she and Butler first entered the visiting room on October 5, 2002 and sat down, an officer told them that they had sat in an area meant for four people and would have to move to an area designated for two. After they moved, Kanitz observed two individuals seated in the area the officer previously claimed was reserved for four. No one told the two individuals to move. Kanitz further stated that once in the designated two person area, another officer came into the visiting room and rearranged furniture, commenting it was in the wrong spot. Kanitz wanted to see the videotape of her visit with Butler because she suspected that they were moved to position them in front of the surveillance camera.

The hearing on the proposed visitor restriction was held on November 1, 2002. During the hearing, hearing officer T. Craig denied Kanitz's request to see the videotape. Craig ruled that it was "confidential" and if Kanitz watched it, she would be privy to the "capabilities of a fixed security camera, thereby compromising the security of the visiting room." Kanitz Am. Compl. Ex. 2, Admin. Hrng. Report. Craig, however, summarized the contents of the videotape and recalled that it "clearly shows your hand firmly up against his crotch. Mr. Butler has two hands over your hand."

-3-

*Ibid.* Kanitz placed on the record her belief that she and Butler were targeted because she is white and Butler is black.

At the conclusion of the hearing, officer Craig made findings. He found that, after viewing the video tape and considering the statements of officer Cooke and Sergeant Osborne, "Ms. Kanitz did place her hand on Mr. Butler's groin." *Ibid.* Craig indicated that Kanitz's actions amounted to a violation of Prison Directive 05.03.140 and upheld the visitor restriction. Thereafter, the warden, Harold White, notified Kanitz that she was permanently restricted from visiting any Michigan Department of Corrections facility. The notice also informed Kanitz of her appellate remedies.

A hearing was also held on the sexual misconduct offense with which Butler had been charged. Officer Craig presided over this hearing as well and similarly denied Butler's request to view the videotape and call the visiting room officer as a witness. Craig made the following findings:

> Hearing Officer finds from the statement on the misconduct report and statement from Sgt Osborne, and a viewing of the video tape, that Officer Cooke is credible in allegation that Ms Kanitz was rubbing Mr Butler's crotch area, as Sgt Osborne states the record button was not pressed at the beginning of the incident, and the video available does clearly show Ms Kanitz's hand in Mr. Butler's crotch. Hearing Officer finds touching of the crotch of the male to be sexual in nature and done for the purpose of the sexual gratification of both parties.

Kanitz Am. Compl. Ex. 3, Maj. Misc. Hrng. Report. Butler was found guilty of sexual misconduct and sentenced to five days of "top lock," that is, a prohibition on leaving his cell for any reason without specific authorization from the prison.

The plaintiffs then appealed their respective decisions. Hearing administrator, Richard B. Stapleton, denied the plaintiffs' requests. Butler also submitted grievances, but each was rejected at all stages of the process either because of untimeliness or on the grounds that prisoners are not

-4-

permitted to file grievances relating to misconduct charges and hearings.  Butler claims that during

this period he came before the parole board but was denied parole following extensive questioning

on the sexual misconduct conviction.

For her part, Kanitz began a letter writing campaign.  She wrote to senators, the director of

the department of corrections, and several attorneys, among others.  As a result of her letters,

Senator Debbie Stabenow issued a referral to the Office of Legislative Corrections Ombudsman.

An investigator was assigned to look into the matter.

The investigator, Charlene Lowrie, obtained the prison records of the incident along with the

videotape.  She reviewed the materials and watched the tape after which she forwarded a report to

the Richard Stapleton, the MDOC Hearings Administrator.  Her report noted:

> The video shows . . . [t]he visitor's hand draped over Butler's leg, not his crotch.
> Butler then takes her hand and their hands are together <u>between his knees</u>.  Their
> hands are nowhere near his crotch.
>
> The video does not support Sgt Osborne's description at 1130 hours when he began
> recording.
>
> The video does not support the hearing officer's statement.
>
> Ms. Kanitz' hand appears to be relaxed on Butler's leg in the video while the couple
> is engaged in a conversation, putting into further question Sgt Osborne and Officer
> Cooke's statements.
>
> For these reasons, I recommend your consideration for rehearing and dismissal of the
> misconduct and dismissal of the visitor restriction.

Kanitz Am.  Compl.  Ex.  11, Lawrie Report (emphasis in original).

Stapleton followed Lawrie's recommendation and overturned Butler's sexual misconduct

conviction and Kanitz's visitor restriction.  Stapleton stated that he had reviewed the videotape and

the tape "reflects only that the 'visitor's hand is draped over Butler's leg, not his crotch.'" Kanitz

Am. Compl. Ex. 13, Request for Rehearing (June 5, 2003). Stapleton further noted that "[i]n fact, the video reveals no touching of prisoner's crotch." *Ibid.* References to the incident subsequently were expunged from Butler's record.

On August 12, 2003, plaintiff Kanitz filed a complaint in this Court, and on November 11, 2003, plaintiff Butler followed suit. Both complaints allege violations of civil rights under 42 U.S.C. §§ 1981, 1983, and 1985. The claims contained in the respective complaints are substantially similar.

The plaintiffs complain that defendants Cooke and Osborne used slanderous and libelous words with deliberate indifference to the truth or falsity of the charges brought against them. They also claim that these defendants maliciously and purposefully created and knowingly used false evidence and provided false statements in violation of the plaintiffs' constitutional rights. These defendants actions, the complaints allege, were motivated by class-based discriminatory animus. The complaints further assert that these defendants denied them equal protection and engaged in a conspiracy to interfere with the plaintiffs' exercise of their rights and privileges. Butler's complaint states that the defendants additionally caused him "atypical and significant hardship when compared to the ordinary incidents of prison conditions." Butler Compl. at ¶¶ 16, 56.

Kanitz claims that officer Craig deprived her of procedural and substantive due process because he ignored her letters, did not allow her to see the videotape, and relied on evidence he knew to be false. In addition, Kanitz asserts that this defendant's actions were taken as part of a civil conspiracy motivated by racial or other class-based discriminatory animus in violation of the Equal Protection Clause. The purpose of the conspiracy was to deprive Kanitz of her due process rights and her First Amendment right to associate with Butler.

-6-

Collectively, the plaintiffs further allege that officer Frey failed to investigate, review, and disclose the false and tainted evidence.  Warden Harold White, they complain, ratified  and took overt and covert action in furtherance of the conspiracy.  The plaintiffs also state that the constitutional violations resulted from policies or practices encouraged, authorized, and ratified by the warden.  White, it is alleged, was responsible for training corrections officers at the prison and established a system that harbored discrimination against mixed-race couples.  Finally, the plaintiffs allege that all of the defendants participated in a conspiracy that violated the plaintiffs' constitutional rights and was motivated by racial discrimination.  The plaintiffs claimed libel and slander *per se* under Michigan law, violation of the Fair and Just Treatment Clause of the Michigan Constitution, and intentional infliction of emotional distress.

After the plaintiffs filed their complaints, this Court referred the matters for pretrial case management to Magistrate Judge Charles E.  Binder pursuant to 28 U.S.C. § 636(b)(1).  On August 4, 2004, the Court consolidated the two cases.  Before the cases were consolidated, the defendants filed a motion to dismiss and for summary judgment with respect to Kanitz and for summary judgment with respect to Butler.

On May 5, 2005, the magistrate judge filed a report recommending that the defendants' motion be denied without prejudice with respect to Kanitz and granted in part and denied in part the motion with respect to Butler.  The magistrate judge recommended that officer T. Craig be dismissed as a party, but that the case proceed on all other grounds.

On May 18, 2005, the defendants timely filed objections the magistrate judge's report.  The plaintiffs have responded to the defendants' objections, and the matter is now before the Court for a *de novo* review in light of the parties' submissions.

-7-

II.

A.

The defendants first object to the magistrate judge's suggestion that their attorney misrepresented certain facts in the Kanitz case.  The magistrate judge wrote:

> The Court is perplexed by the motion filed in the Kanitz case because it completely ignores the crucial facts that the visitation ban was reversed and Butler's misconduct conviction overturned. For example, Defendants' motion makes the logically-appealing argument that the case should be dismissed because (1) Kanitz "violated the rules by inappropriately fondling prisoner Butler's crotch," (2) the rule prohibiting this behavior during visitations has long been upheld by courts as being based upon legitimate penological interests, and therefore (3) the suspension of her visitation rights was appropriate and not in violation of any rights. (Br. in Supp., Dkt. 23 at 5-8.) The only problem with this argument is that it turns a blind eye to the subsequent reversal of Hearing Officer Craig's findings that Kanitz and Butler violated the rules. It is difficult to conceive of how counsel for Defendants could have misapprehended the lawsuit as one brought to challenge a permanent ban on visitation. The brief goes on to argue as follows:
>
>> In this case, Defendant Craig made findings that Defendants [sic] . . . engaged in sexual misconduct. Defendants [assert] that there is an adequate basis to sustain the Hearing Officer's decision. The decision to keep the video tape confidential was based on sound prison policies required to protect the security of the facility. Most importantly, Plaintiff has provided no documentation for her claim that Defendants presented false evidence against her.
>>
>> Plaintiff is essentially complaining that the Hearings Officer improperly found the statements of the reporting officers more credible than her denial of wrongdoing. Plaintiff would have this Court re-decide the issue of credibility.
>
> (Id. at 12.) I am baffled by these arguments in light of the documentation attached to the complaint detailing the subsequent discovery that the video tape did not show what the corrections officers and hearing officer stated that it showed. The brief also asserts that "Plaintiff fails to allege any class-based or racial animus." (Id. at 15.) This is also inaccurate. As summarized above, Plaintiff Kanitz's complaint clearly asserts racial and other class-based discriminatory animus numerous times.

-8-

Report & Recommendation (R & R) at 9-10.  The magistrate judge believed that the defendants'
attorney misrepresented the facts and recommended that the Court dismiss their motion with respect
to Kanitz.

The defendants claim that there was no intent to misrepresent the facts and they simply were
attempting to make the point that all officers involved were acting in good faith and in accordance
with prison policies.  Kanitz knew that her restrictions had been reversed, and the defendants were
not disputing that fact.  The defendants further stated that their attorney was carrying a high case
load and in a period of transition; she neglected some points that the magistrate judge found crucial.
Nonetheless, the defendants insist they were defending their original actions.

Although the defendants' attorney may not have intentionally misrepresented the facts, the
defendants' brief makes no mention of the case's subsequent history.  After independent review of
the videotape by the ombudsman, prison officials found that the visitation restriction was improper
because the videotape "reflects only that the 'visitor's hand is draped over Butler's leg, not his
crotch.'" Kanitz Am. Compl.  Ex.  13, Request for Rehearing (June 5, 2003).  Moreover, the
videotape revealed "no touching of prisoner's crotch." *Ibid.*  Those facts are not insignificant.

The magistrate judge based his recommendation that the Court dismiss the defendants'
motion without prejudice on *Cunningham v.  Sears, Roebuck & Co.*, 854 F.2d 914 (6th Cir. 1988).
In that case, the plaintiff brought a claim of race discrimination.  During voir dire, a juror replied
in answer to a question that she had never been acquainted with a key witness for the plaintiff.  After
the key witness testified she informed the plaintiff that she knew a juror.  The plaintiff did not alert
the court, and the jury ultimately returned a verdict against the plaintiff.  Thereafter, the plaintiff
consulted with his attorney and called the witness that night.  The plaintiff tape recorded the

-9-

conversation in which the witness stated that she had known the juror some twenty-five years previously.

The plaintiff then moved for a new trial. After conducting an evidentiary hearing, the court denied the motion because the plaintiff knew of the acquaintance pre-verdict and the relationship otherwise did rise to a level sufficient to suggest bias. The plaintiff appealed the district court's denial. On appeal, the plaintiff did not state in his brief that he had pre-verdict knowledge of the acquaintance and did not designate as part of the record on appeal, the district court's findings in that regard. The court of appeals found that this omission constituted a misrepresentation of the facts. It reasoned

> Finally, we note that appellant's counsel, Leo P. Ross of Columbus, Ohio, makes no mention in his brief of his client's knowledge during trial and did not designate for inclusion in the Joint Appendix the District Court's ruling from the bench at the hearing, which included findings on this issue. Rather, in an apparent effort to mislead the court as to the true facts, appellant's brief asserts only: "*Within several days after the conclusion of the second trial of this action*, it was learned that a juror . . . had failed to completely and correctly answer a question posed by the Court during the voir dire." Brief at 2 (emphasis supplied). Based on the record before us, counsel's treatment of this issue constitutes a serious misrepresentation of the facts. Although we recognize that counsel has a duty to zealously represent his client, there is a degree of candor necessary for effective disposition of cases in this Court that counsel owes as an officer of the court. His failure in this regard suggests bad faith. Accordingly, appellant's counsel is given notice that should such conduct recur, the Court will recommend that counsel be cited to show cause why he should not be held to have acted in bad faith and be subject to sanctions under the inherent power of this Court. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980).

*Id.* at 916.

Like the court appeals, the magistrate judge here was faced with a factual omission that, without explanation, changed the nature of the case. The magistrate judge believed he was misled by counsel, and given the critical nature of the omitted facts and their obvious bearing on the core legal issues in the case, this Court cannot disagree. Whether intentional or not, the facts have been

-10-

misstated.  The defendants' objection lacks merit.  The Court finds that the magistrate judge correctly decided the issue.  The Court therefore will overrule the defendants' first objection.

B.

The defendants' second objection relates to the first: they claim that the magistrate judge erroneously stated that defense counsel on the Kanitz case failed to acknowledge in her arguments that the plaintiff had alleged class-based or discriminatory animus in her complaint.  The magistrate judge, frustrated by what he beleived were misrepresented facts, stated

> [The defendants'] brief also asserts that "Plaintiff fails to allege any class-based or racial animus." (Id. at 15.) This is also inaccurate. As summarized above, Plaintiff Kanitz's complaint clearly asserts racial and other class-based discriminatory animus numerous times.

R & R at 10.

The defendants cite several pages of their brief in which they do acknowledge that Kanitz is asserting a claim of racial discrimination under the Equal Protection Clause.  *See* Defs' Mot. Dismiss at 3 (noting that Kanitz has claimed racial discrimination); *id.* at 8 (claiming that Kanitz failed to show "purposeful" discrimination); *id.* at 9 (characterizing the plaintiffs' allegations of class-based discrimination as vague and conclusory).  Although other portions of the defendant's brief offset the magistrate judge's conclusion, his ultimate determination is sound: the defendants have misstated the facts.

C.

1.

The remainder of the defendants' objections relate to the magistrate judge's recommendation that the Court deny in part their motion for summary judgment with respect to plaintiff Butler.  The defendants first attack the magistrate judge's conclusion that Butler "is not required to allege or

-11-

demonstrate that same-race couples were allowed to engage in sexual behavior in the visiting room in order to state an equal protection claim." R & R at 17-18.  The defendants argue that on a motion for summary judgment, a plaintiff must come forward with record facts in support of his contentions and Butler has failed to do so here.

The magistrate judge reasoned that the Equal Protection Clause's command that no State shall "'shall deny to any person within its jurisdiction the equal protection of the laws'" R &R at 18 (quoting U.S. Const.  amend XIV, § 1), has been interpreted by the Supreme Court to "'embod[y] the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Ibid.* (quoting *Vacco v.  Quill*, 521 U.S. 793, 799 (1997)).  The Sixth Circuit, the magistrate judge noted, has explained that "'generally an equal protection claim requires a plaintiff to allege that a defendant has intentionally discriminated against him because the individual is part of a vulnerable minority class of protected individuals.'" *Ibid.*  (quoting *Barnes v. City of Cincinnati*, 401 F.3d 729, 739 (6th Cir. 2005).

The magistrate judge concluded that burden was met in this case:

Here, Plaintiff Butler alleged in his complaint that he was intentionally and maliciously discriminated against on the basis of his race. Further, in his response to defendants' motion, he asserts that "there is an established pattern to the way sexual misconducts are dealt with at this facility. White males are routinely warned (by the correctional officers) about acts or behaviors that if done by a black male would be cause for visit termination, misconduct tickets, and subsequent visitor restrictions, even in situations where a sexual misconduct has not been clearly established." (Dkt. 33 at 23.) He claims that he can furnish supporting depositions during discovery, and further contends that this fact can be proven through an examination of MDOC misconduct records. (Id. at 23-24.)

In light of the foregoing, I suggest that Plaintiff Butler has met the requirement of alleging that he was treated differently because of his membership in a protected class, and therefore I further suggest that defendants' motion for summary judgment on Plaintiff Butler's equal protection claim be denied.

-12-

*Id.* at 18-19

It is true that the defendants have come forward with affidavits in support of their motion, and plaintiff Butler has not. *See* Defs' Mot Summ. J. Ex. B, Cooke aff. ¶ 12 (stating "I did not issue the Major Misconduct Report because of the parties' race, but because I saw them engaging in a visiting room violation"); Ex. C, Osborne aff. at ¶ 5 (stating "[t]he Major Misconduct was written based on what we observed[.]").  Of course, the contents of the videotape apparently contradict the affidavits, based on the statements and actions of MDOC decision makers.  In addition, the magistrate judge observed that the formal strictures of summary judgment should not serve to preclude consideration of a prisoner's response.

That later observation is borne out by the case law.  *See United States v. Ninety-Three Firearms*, 330 F.3d 414, 427-28 (6th Cir. 2003) (joining the majority of circuits in holding that "a *pro se* litigant is entitled to notice of the consequences of a summary judgment and the requirements of the summary judgment rule. . . .  However, this court has held that no such rule providing 'special assistance' exists with respect to nonprisoner *pro se* litigants") (internal citations omitted).  As the Sixth Circuit has explained, a relaxation of the rule for prisoner *pro se* litigants occurs "since [prisoners] often have little choice in proceeding on their own behalf."  *Ibid.*

Outside of the prisoner litigation context, the Sixth Circuit has found that summary judgment motions, as a matter of discretion, may be found premature where discovery has not commenced. In *Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir. 1989), the court of appeals explained the application of Rule 56 to instances in which discovery has not been completed.  The court of appeals reasoned:

It is well established, however, that the scope of discovery is within the sound discretion of the trial court. *See Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229,

-13-

1240 (6th Cir. [1981)]; *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976). The party opposing a motion for summary judgment, therefore, possesses no absolute right to additional time for discovery under Rule 56, Fed.R.Civ.P. *See Timberlane Lumber Co. v. Bank of America, N.T. & S.A.*, 549 F.2d 597, 602 (9th Cir. 1976); *see also United States Through Small Business Administration v. Light*, 766 F.2d 394, 397 (8th Cir. 1985). Rather, Rule 56(f) provides the mechanism through which the party may obtain more time:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained.

*Id.* at 356-57.

In this case, plaintiff Butler has not had the opportunity to conduct discovery or present depositions in opposition to the motion. Further, he is untrained in the law and was not on notice that the better course of action would be have been to submit an affidavit to rebut the affidavits submitted by the defendants. He does, however, allege that he was discriminated against because of his race. *See* Butler Compl. at 1 (stating that the defendants' actions "were racially motivated and took issue with the fact that the Plaintiff is African-American and the Plaintiff's fiancee is Caucasian"). Butler also provides an example in his brief in response to the defendants' motion for summary judgment. He wrote that "there is an established pattern to the way sexual misconduct are dealt with at his facility. White males are routinely warned about acts or behaviors that if done by a black male would be cause for visit termination, misconduct tickets, and subsequent visitor restrictions, even in situations where a sexual misconduct has not been clearly established." Butler Resp. Br. at 23.

Had Butler provided an affidavit that recounted the above statements, there would be little debate that a fact question exists. As the Sixth Circuit has held, the "Equal Protection Clause . . . protects citizens from [state] action based on race." *Bennett v. City of Eastpointe*, 410 F.3d 810, 818

-14-

(6th Cir. 2005). A claim of selective enforcement of rules and regulations based on race as Butler claims here falls squarely within the Fourteenth Amendment's ambit. *Ibid.* To succeed on such a claim, the plaintiff must show that the challenged action "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 608 (1985). Discriminatory effect may be demonstrated by evidence "showing similarly situated individuals of another race were treated differently[.]" *Bennett*, 410 F.3d at 418 (internal citation omitted). Discriminatory purpose may be shown by "evidence that an official chose to prosecute or engage in some other action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group."

The evidence at this stage of the litigation consists largely of statements by the parties. The defendants state by way of affidavit that race was not a factor in their decision to enforce prison regulations prohibiting sexual conduct. Plaintiff Butler insists by way of his complaint and response brief that the defendants' actions were undertaken because he was black and Kanitz was white, and white inmates were routinely warned about actions for which black inmates generally were disciplined. Because the Court is not precluded from considering Butler's response despite the absence of a sworn affidavit, *see Ninety-Three Firearms*, 330 F.3d at 427-28, a triable issue of fact with respect to Butler's equal protection claim exists. Therefore, the defendants' objection to magistrate judge's report in this regard is overruled.

2.

The defendants next object stating that the videotape of the incident supports their version of events. They believe that the tape clearly shows plaintiff Kanitz's arm in a position that allowed her hand to touch Butler's crotch. The camera, according to the officers' affidavit statements, was

not turned on in time to capture the actual touching, but the weight of the evidence – officer Cooke and Sergeant Osborne's observations along with the tape – supports hearing officer Craig's findings.

The defendants have not provided the Court with a copy of the videotape and therefore there is no independent means for verification of the defendants' statements. Even if plaintiff Kanitz could have touched Butler's crotch based on the position of her hand, it does not necessarily follow that she actually did so. In fact, the prison overturned Butler's conviction precisely because the videotape "reflect[ed] only that the visitor's hand is draped over Butler's leg, not his crotch." Kanitz Am. Compl. Ex. 13, Request for Rehearing (June 5, 2003). If the videotape did not capture the alleged groping, then proof that it occurred necessarily relies on the credibility of the witnesses to the event. When presented with two versions of an event, the Court must accept the version most favorable to the nonmoving party at this stage of the litigation. *See Booker v. Brown & Williamson Tobacco Co*, 879 F.2d 1304, 1310 (6th Cir. 1989).

3.

The defendants next challenge the magistrate judge's conclusion that there was sufficient evidence of conspiracy to withstand summary judgment. The defendants insist that Butler has failed to allege statements from which a conspiracy can be inferred. The defendants assert that there was insufficient time for the defendants to come to a meeting of the minds. Defendants Cooke and Osborne state that they had only seconds or minutes before they switched on the video recorder, and there is no evidence that Cooke and Osborne met with or had any contact with defendants Frey or White to form a conspiracy with them.

As the magistrate judge noted, the Sixth Circuit has defined a civil conspiracy as "an agreement between two or more persons to injure another by unlawful action." *Spadafore v.*

-16-

*Gardner*, 330 F.3d 849 (6th Cir. 2003). Participating coconspirators need not know all the details of the illegal plan or all of the participants involved. *Ibid.* Rather, "all that must be shown is there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."*Ibid.* Because "[r]arely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, . . .circumstantial evidence may provide adequate proof of conspiracy." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000).

In this case, the magistrate judge concluded:

Plaintiff Butler has specifically alleged that Defendants Cooke and Osborne conspired to terminate the visit on false grounds, that Defendant Frey's participation in the conspiracy is shown by his failure to call to light the fact that the video tape did not show what Defendants Cooke and Osborne claimed, and that Defendant White's participation in the conspiracy is evidenced by his letter stating that he reviewed the video tape and it clearly showed Plaintiff engaging in prohibited sexual conduct. In his response to Defendants' motion, Plaintiff further points to a 2004 memorandum to the correctional facility staff authored by Defendant Warden White entitled "From the Warden's Office" wherein he stated the following:

Are the rest of us doing our jobs or carrying ourselves with the character and professionalism that would draw respect and praise from others? It is troubling to hear from prisoners and quite often from staff about the way some of us conduct ourselves towards others. I've been around long enough to know that prisoners and staff are not always truthful in their accusations. I also know that only a small percentage of staff lack or don't practice the values expected from the Department or a decent society. When we lie or mistreat the prisoners or our fellow worker, are you any better than the lawbreakers that we watch everyday? The people that write false misconducts, destroy prisoner property, use profane language towards others, harass prisoners or fellow workers, you know who you are. Please stop because you make us all look bad. Don't forget we are role models to the prisoners, the public, our children and grandchildren. Respect gets respect!! (Dkt. 33 at Ex. 31.)

In light of the foregoing, I suggest that Plaintiff has presented circumstantial evidence on which a jury could find that there was a plan to discriminate against Plaintiff on the basis of his race, that the alleged coconspirators shared in the general conspiratorial objective, and that overt acts were committed in furtherance of the conspiracy that caused injury to Plaintiff. Accordingly, I suggest that Plaintiff's

-17-

conspiracy claim alleged under § 1983 is not illusory, and that Defendants' motion should therefore be denied as to this claim.

R & R at 23. With respect to the section 1985 claim, the magistrate judge reasoned:

> In order to state a cause of action for conspiracy under § 1985, a plaintiff must allege the existence of: "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). The plaintiff must also allege that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir. 2000) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 829 (1983)).

> For the same reasons just discussed, I suggest that defendants' motion with regard to Plaintiff's § 1985 claim of conspiracy to deprive him of his due process and equal protection right should be denied.

*Id.* at 24.

The plaintiffs allege that the defendants conspired to deprive Butler of his equal protection and due process rights. There is evidence, which, if believed, shows that (1) Cooke and Osborne claimed that the plaintiffs violated prison regulations because Kanitz rubbed Butler's crotch and there was videotape of the incident; (2) officer Martin Frey, on the basis of allegations made by Osborne and Cooke, and after investigating the matter, sent a notice of proposed visitor restriction to plaintiff Kanitz, and submitted his findings for use at the hearings against both plaintiffs; (3) Martin Frey viewed the video, which did not support Cooke and Osborne's claims of wrongdoing, but nonetheless forwarded it to the hearings officer; (4) officer Craig conducted a hearing and stated in his findings that the videotape along with other evidence demonstrated violations of prison regulations; (5) the hearing appeals officer upheld Craig's findings; and (6) after an independent

-18-

investigation, the visitor restriction and conviction were overturned because the videotape did not show Kanitz rubbing Butler's crotch.  These facts permit an inference of an illegal agreement.

The defendants also claim that there was insufficient time for a meeting of the minds between Cooke and Osborne.  However, for summary judgement purposes "the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can infer from the circumstances [that the alleged conspirators] had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives." *Robinson v. Township of Waterford,* 883 F.2d 75, 79 (6th Cir. 1989) (internal quotation marks and citations omitted).  In this case, the evidence noted above gives rise to such an inference.  The magistrate judge properly concluded that there was sufficient circumstantial evidence of a conspiracy.

However, as noted above, the magistrate judge relied on a 2004 memorandum sent by the warden to correctional facility staff to implicate him in the conspiracy.  The memorandum took issue with "the people (staff) that write false misconducts, destroy prison property, use profane language towards others, harass prisoners or other officials, you know who you are." Butler Resp. Br.  Ex. 31, 2004 Memorandum.  By itself, this document does not demonstrate agreement with or participation in a scheme to deprive Butler of his rights.  The document was written in 2004, a year and a half after the incident occurred.  When viewed in the light most favorable to the plaintiffs, this evidence is not sufficient to establish White's participation in a conspiracy.

-19-

4.

Finally, the defendants object to the magistrate judge's conclusion that they manufactured false evidence in violation of Butler's due process rights because there is no showing that the evidence is false.

The defendants' contention is based on an apparent misreading of the magistrate judge's report. The magistrate judge did not conclude that the evidence was false. Rather, he concluded that there was a genuine issue of material fact that precluded summary judgment. That conclusion is well supported. Butler's misconduct conviction was overturned after an independent investigation revealed that the videotape on which officer Craig relied did not show Kanitz rubbing Butler's crotch. Although the defendants state that the recording did not begin until after the rubbing, neither officer Craig's findings at the hearing nor the decision on appeal make that distinction. Thus, whether the evidence was false is a question for the jury.

Alternatively, the defendants contend that the presentation of false evidence against a prisoner is not a due process violation. The magistrate judge concluded that the use of false evidence "in a prisoner's administrative disciplinary hearing is no less a violation of the Due Process Clause that its use in a criminal trial." R & R at 20 (citing *Morrison v. LeFevre*, 592 F. Supp. 1052, 1073 (S.D.N.Y 1984)).

As the defendants point out, *Morrison* has since been distinguished. In *Friedman v. Rideout*, 808 F.2d 949 (2nd Cir. 1986), the Second Circuit reasoned:

> The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law. As is shown by the facts of this case, before Freeman could be placed in segregation, due process required that he be granted a hearing on whatever charges had been made against

-20-

2:03-cv-10322-DML-CEB   Doc # 37   Filed 11/22/05   Pg 21 of 23   Pg ID 297

> him. *See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 323(1976); *Wolff v. McDonnell,*
> 418 U.S. 539, 571 (1974); *Sher v. Coughlin*, 739 F.2d 77, 81 (2d Cir.1984).
>
> The district court, in *Morrison v. Lefevre*, [] stated that "[h]owever minimal may be
> the process due to prisoners before segregation, that process is insufficient when it
> has been contaminated by the introduction through state action of false inculpatory
> evidence. The introduction of false evidence in itself violates the due process
> clause." *Id.* at 1073 (emphasis added). This broad dictum, however, must be read in
> the factual context of the *Morrison* case. In *Morrison*, there was no hearing, and it
> was the mere filing of the charge itself that caused the plaintiff to be segregated. In
> the present case, Freeman was granted a hearing, and had the opportunity to rebut the
> unfounded or false charges. The holding in the *Morrison* case, therefore, does not
> support Freeman's claim under section 1983.

*Id.* at 952-53. Although the magistrate judge relied on *Morrison* for a proposition that has been

discredited, it does not follow that his ultimate conclusion is incorrect. The decision in *Rideout* was

based on the premise that the hearing provided an adequate forum to rebut the charges. In this case,

plaintiff Butler was not permitted to view the videotape or call the visiting room officer as a witness,

and had no real opportunity to rebut the charges. In *Rideout*, there were no such allegations.

The Second Circuit drew upon this distinction in *Jones v. Coughlin*, 45 F.3d 677, 679 (2d

Cir. 1995):

> [I]t is not clear that *Freeman v. Rideout* provides the proper framework for decision.
> In that case, though we stated that a "prison inmate has no constitutionally
> guaranteed immunity from being falsely or wrongly accused of conduct which may
> result in the deprivation of a protected liberty interest," 808 F.2d at 951, we reasoned
> that the prisoner's due process rights are protected if he is granted a hearing on the
> charges and given an opportunity to rebut them, *see id.* at 953. The present case may
> well be factually distinguishable from *Freeman* if, as alleged, Jones was unfairly
> denied the right to call key witnesses in defense of the charges against him.

In this case, Butler was denied the ability to see the potentially exculpating or inculpating evidence

against him much like the prisoner in *Rideout* was not permitted to call witnesses on his behalf. The

defendants' argument holds only insofar as the process following the presentation of false evidence

provides an adequate forum to counter such evidence. This case is therefore distinguishable from

*Rideout*, and plaintiff Butler has come forward with evidence that his due process rights were violated.  The Court therefore will overrule this objection.

III.

After conducting a *de novo* review, the Court is satisfied that the defendants' motion against plaintiff Kanitz should be denied.  Plaintiff Bulter has alleged sufficient evidence with respect to most claims.  However, evidence against the warden is insufficient to implicate him in the alleged conspiracy.

Accordingly it is **ORDERED** that the magistrate judge's report and recommendation is **ADOPTED IN PART**.

It is further **ORDERED** that defendants' motion to dismiss and for summary judgment against plaintiff Kanitz [dkt #23] is **DENIED.**

It is further **ORDERED** that the defendants' motion with respect to plaintiff Butler [dkt # 14]  is **DENIED IN PART**.

It is further **ORDERED** that defendants White and Craig are **DISMISSED** as parties to this action.

It is further **ORDERED** that the matter is referred to the magistrate judge for further pretrial proceedings. The magistrate judge may consider referring the matter for appointment of *pro bono* counsel if he deems it appropriate or expedient.  The magistrate judge shall report to the Court when the matter is ready for trial.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 22, 2005

-22-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 22, 2005.

s/Tracy A. Jacobs
TRACY A. JACOBS